**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WEEKS MARINE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **02-205C** |
| | ) | **(Judge Allegra)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION TO COMPEL DISCOVERY**

COMES NOW Plaintiff, Weeks Marine, Inc. ("Weeks Marine") by and through its undersigned counsel of record, and moves this Court for an Order pursuant to United States Court of Federal Claims Rule 37, compelling United States of America ("Government") to provide certain documents relating to the analysis by the Government of the claim submitted by Weeks Marine in this case. For its suggestions in support of this Motion, Weeks Marine states and alleges as follows:

1. The claim comprises a Type I differing site condition claim arising out of the installation of a geotextile tube on the weir portion of a rock jetty at the mouth of the Colorado River in Matagorda Bay, Texas. Weeks Marine contends that the physical conditions at the jobsite differed materially from those indicated in the contract documents.

2. Extensive discovery has been undertaken, and factual discovery has been completed in the case. As part of the discovery, the Government produced certain documents that it now contends are protected by the work product doctrine. Those documents consist of several pages of claims analysis prepared by two non-lawyers with the Army Corps of Engineers ("Corps").

3. Counsel for the Government, John Williamson, advised counsel for Plaintiff, Danne Webb, that these pages had been produced inadvertently. Based on Mr. Williamson's characterizations of the nature and content of the documents, Danne Webb agreed to return the documents in question to Mr. Williamson, subject to a reservation of rights to seek relief from this Court. No copies or originals of the documents were made or retained by Mr. Webb; rather, all of the questionable documents have been returned to Mr. Williamson.

4. Weeks Marine believes that the documents are clearly relevant and are reasonably calculated to lead to the discovery of admissible evidence. However, in the absence of the documents, Weeks Marine is handicapped in advocating specific and particular reasons for the discoverability of those documents. At the very least, to the extent these claim documents contain admissions, statements or positions of the Government with regard to the claim that is the subject of this litigation, the documents should be produced. Certainly, those documents are not available to Weeks Marine from any other source, which would deem the documents discoverable.

5. To give the Court some context, the following excerpt from the deposition of Don Carelock will describe the issue and the documents sought:

Q: (By Mr. Webb) Okay. Tell me what you did in your claim analysis.

A: (By Mr. Carelock) I initially assigned the task of actually preparing the claims analysis itself to Hayman Dengler. Hayman prepared a good portion of that, of the actual claims analysis, and when I got the product from Hayman I wasn't comfortable with it in the final format so I added some things to it and basically incorporated - I reviewed his work, of course, and incorporated that into the final product, the final claims analysis.

Q: With regard to this project, focusing on the geotube aspect - first of all, you understand the geotube aspect is what comprises the claim of Weeks and Dredge America in this case?

A: Yes.

Q: So for this line of questions, when I refer to "the project" I'm going to refer exclusively to the geotube portion. Okay?

A: Okay.

Q: What was it that you specifically requested Hayman to do, what was it you wanted him to analyze or to review?

A: I wanted him to prepare a claims analysis memorandum in accordance with our O.M., operating manual, on how they're to be prepared. There are certain requirements that need to be included in that claims analysis.

Mr. Williamson: Can we go off the record a second?

Mr. Webb: Sure

(Discussion off the Record)

Mr. Williamson: I just wanted to preserve the Government's position that the claims analysis prepared by Mr. Dengler and Mr. Carelock is work product and privileged communications, and in the process of trying to move forward discovery in this case and make a good faith initial disclosure, there were three ring binders, three volumes of ring binders that we produced to the plaintiff some months ago, and we inadvertently included in one of those binders, I believe it's Volume II, a claims analysis, and it is our position that the cover memo to the office of counsel, the timeline that I believe was prepared by Mr. Carelock, and also the memorandum prepared by Mr. Dengler are work product and are privileged communications and that the production of those to the plaintiffs was an inadvertent production. Mr. Webb and I discussed this before the onset of the deposition and at that time I understood this position was that those would be returned to us. I don't know if that's still your position now.

Mr. Webb: I'm going to have to re-evaluate that position in the context of whether those documents are in fact privileged or if they are subject to discovery. At this point I'm not - I'm not in a position to tell you one way or the other about whether I will consider those matters privileged.

Q: (By Mr. Webb) We were talking about the procedure that you used, Mr. Carelock, in the analysis of the claim, and you talked about the operations manual containing some requirements for claims analysis; is that correct?

A: Yes.

Q: What are those procedures?

A: Generally, to forward the claim to office of counsel and/or contracting and they then assign a claim number and send out a request back to us in the northern area office to prepare a claims analysis. And contracting has certain roles in there that they correspond with the contractor acknowledging receipt of the claim, and then there's certain other procedures - or items that we need to address as part of that claims analysis.

Q: Do you know what those items are?

A: I'd have to look at the O.M.

Mr. Webb: I think it would be helpful for me, too, if I could get a copy of the operations manual, John. Would you agree to make a copy of that available? I don't think that was something that was produced.

Mr. Williamson: I don't believe it has been produced. I'm going to have to consult with some others in order to determine what the usual practice is regarding that, so I can't agree to that right now. I certainly agree that I can take that under advisement.

Mr. Webb: That's fine. I'll try to make a running list of the things, and maybe you and I can formalize that as we need to in correspondence after the deposition.

Mr. Williamson: Fine.

Q: (By Mr. Webb) You indicated that Hayman performed that analysis at your request and provided that analysis to you; is that correct?

A: Yes.

Q: Okay. And you also indicated that you were not comfortable with the materials that you received from him; is that correct?

A: I said comfortable. I don't want to give you the impression that there was anything wrong with it. It just wasn't as complete as I wanted it to be.

Q: In what regard?

A: I'd have to go back and look -

Q: Does -

A: - to tell you specifically.

Q: Does Mr. Hayman's analysis still - Mr. Hayman - does Mr. Dengler's analysis still exist in the form that it was presented to you?

A: Yes.

Q: Okay. Is that something you reviewed in preparation for your deposition?

A: Yes.

Q: All right. How long after the receipt of the claim did you ask Mr. Dengler to perform his analysis?

A: I don't recall.

Q: Okay. Do you recall how long it took him to perform his analysis?

A: No, sir.

Q: All right. Do you know what steps he took to perform his analysis?

A: No.

Q: Did you give him any instructions on what he should do to perform this analysis?

A: I told him to prepare it in accordance with our procedure for analyzing claims.

Q: The procedure that's outlined in the operations manual?

A: Yes.

Q: Okay. Did you feel like he did that?

A: I believe he followed the process, yes.

Q: There were just areas that you felt were not complete enough for your satisfaction?

A: Yes.

Q: Okay. So correct me if I'm wrong, but you believed that he followed the procedures that were required, they just weren't to your level of satisfaction?

A: Yes.

Q: Are there any specific areas that you can recall as you sit here today after reviewing the documents in preparation for your deposition that you felt were incomplete?

Mr. Williamson: I object and at this point I'm going to instruct the witness not to answer because I think that goes into the substance of the analysis and would invade the work product doctrine. I also do just want to note for the record that my understanding, based on our conversation off the record before the deposition, was that at this point neither you nor Mr. McDougal have reviewed the analysis in any substance, and I just want to put on the record that I've requested that you not do that, and I understand from what you said that you may not be able to make a determination about whether or not it's protected by the work product doctrine without actually reviewing it. But I think given that we made an inadvertent production and at this point you have not reviewed it in detail, I don't think it would be appropriate to do that. In fact, I know that under at least the District of Colorado [sic] Bar ethics rules if an inadvertent production has been made by one side to the other side and the receiving party is notified of the inadvertent production before reviewing the substance of the materials produced, then it is an ethical violation for the receiving party to produce it. And please don't misunderstand me, I'm not trying to allege any sort of unethical conduct or suggest that you would engage in that, but - and I don't know what particular ethics rules would govern for this proceeding. I don't think you're admitted to the Bar of the District of Columbia, and I don't know if that's the appropriate one, but I just did want to note that for the record.

Mr. Webb: I'm sure that sometime during the course of the depositions today or tomorrow you and I can figure out a procedure for dealing with perhaps an in-camera review by Judge Allegra of those materials, but -

Mr. Williamson: That's fine.

Mr. Webb: - I understand your position.

Mr. Williamson: Okay. Good. Thanks.

*See Deposition of Don Carelock, pp. 34-41*.

6. The Government has taken the position in this case that the materials in question were produced inadvertently. To demonstrate good faith, Plaintiff has returned those documents to the Government. There is certainly authority for the proposition, however, that even unintentional disclosure of the documents constitutes a waiver of otherwise confidential communication. *See In Re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) (holding that the attorney-client privilege is lost "even if the disclosure is inadvertent.")

7. In accordance with this Court's rules, counsel have conferred and have attempted to resolve this issue without seeking Court intervention. However, counsel have not been able to reach a resolution. Accordingly, this Motion is necessary.

8. In terms of relief, Plaintiff requests disclosure of the documents that have been represented as confidential. To make the determination as to whether those documents are discoverable, Plaintiff's counsel suggests that counsel for the Government provide the documents to this Court *in camera* for the Court's inspection and ruling. Based upon the results of that *in camera* review, the Court can make a determination as to whether the documents are discoverable and, if so, can compel production of those documents to counsel for Plaintiff.

WHEREFORE, for the foregoing reasons, Plaintiff Weeks Marine respectfully requests that this Court review the subject documents *in camera* to make a determination as to the discoverability and admissibility of them and take any other action that is warranted under the circumstances.

Respectfully submitted,

MILLER LAW FIRM, P.C.

/s/ Richard W. Miller
Richard W. Miller MO #16136
Danne W. Webb MO #39384
4310 Madison Avenue
Kansas City, Missouri 64111
Ph: (816) 531-0755
Fax: (816) 561-6361
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned certifies that the above and foregoing was mailed this 24th day of June, 2003, to:

Robert D. McCallum, Jr.
David M. Cohen
John Williamson
Commercial Litigation Branch
Civil Division
Department of Justice
Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

/s/ Richard W. Miller
Attorney for Plaintiff