IN THE UNITED STATES COURT
OF FEDERAL CLAIMS

WEEKS MARINE, INC., NO. 02-205C
PLAINTIFF

VERSUS

UNITED STATES, (JUDGE ALLEGRA)
DEFENDANT

---

VOLUME II OF THE DEPOSITION OF HAYMAN DENGLER, 142 Oyster Creek Drive, #37, Lake Jackson, Texas 77566, taken by counsel for plaintiff, Weeks Marine, Inc., in the Offices of Weeks Marine, Inc., 304 Gaille Drive, Covington, Louisiana 70433, at 1:50 o'clock p.m. on Thursday, the 22nd day of May, 2003.

APPEARANCES:

MILLER LAW FIRM
Attorneys at Law
BY: DANNE W. WEBB, ESQ.
4310 Madison Avenue



Kansas City, Missouri 64111
ATTORNEYS FOR PLAINTIFF
WEEKS MARINE, INC.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
Commercial Litigation Branch
JOHN H. WILLIAMSON, ESQ.
Trial Attorney
1100 L Street, N. W.
Washington, D.C. 20530

ATTORNEYS FOR DEFENDANT
UNITED STATES

Also present
J. Stephen Chatry
Daniel McDougal

REPORTED BY:

JANE E. PENDLETON
Certified Court Reporter



This deposition is being taken pursuant to Rule 30 of the Rules of the Court of Federal Claims.

* * * *

JANE E. PENDLETON, Certified Court Reporter, in and for the Parish of Orleans, State of Louisiana, officiated in administering the oath to the witness.



HAYMAN DENGLER,
142 Oyster Creek Drive, #37, Lake Jackson, Texas 77566, after having been first duly sworn, was examined and testified under oath as follows:

COURT REPORTER:
Deposition of Mr. Dengler commences at 1:50.

EXAMINATION BY MR. WEBB:

Q. Mr. Dengler, we're continuing your deposition that we started, I believe, back in February, and you understand you are still under oath just as you were then?
A. Yes.
Q. I've got a few questions that I want to follow up with you on. Do you recall during the course of the construction by Dredge America a conversation with John Morris where Mr. Morris asked you if Dredge America could move its dredge from the Impoundment Basin into an area up in the mouth of the Colorado River where the dredge would be better protected?
A. I remember some conversation with John Morris about that.
Q. Do you recall when those

MR. WILLIAMSON:
Objection to the form of the question.
THE WITNESS:
I'm not aware of any granite stones being changed.
EXAMINATION BY MR. WEBB:
Q. Similarly, are you aware of whether any construction was undertaken on the surface of the weir out in the water in the area where we knew the geotubes were designed to be placed from the period of 1989 until the year 2000?
A. I'm not aware of any work being done in that area in any construction.
MR. WILLIAMSON:
Other than this attempt to install the geotubes?
EXAMINATION BY MR. WEBB:
Q. I guess, yes, other than the attempt to place the geotube are you aware of any other construction project or efforts on the weir portion of the jetty where the geotubes were designed to be placed from 1989 through the year 2000?
A. Not in that area, no, sir.



Q. Do you recognize the gentleman who appears in Exhibit 184?
A. I cannot identify that person.
MR. WILLIAMSON:
Objection to the form of the question. There are numerous people that appear in 184.
EXAMINATION BY MR. WEBB:
Q. Do you see a man walking or jumping or at least somehow on the weir portion of the jetty?
A. Yes, I do.
Q. Do you have any idea whether he is a construction worker?
A. I have no idea.
Q. Based on his presence on the stone that his left foot appears to be leaving, do you have an estimate as to how wide the surface of the weir portion of the jetty is in that area?
MR. WILLIAMSON:
Objection to the form of the question, vague as to what is meant by area.
EXAMINATION BY MR. WEBB:



Q. How wide is the surface of the weir that you can see above the water in that area?
MR. WILLIAMSON:
Same objection.
THE WITNESS:
Above water, knowing the construction of the jetty, I'm going to say it's 16 feet wide.
EXAMINATION BY MR. WEBB:
Q. Why do you say that?
A. Because that's what's depicted in the sketch on exhibit -- sketch one in the amendment.
Q. Do you believe that, using him as a rough scale if you can, that the surface of the jetty there that you can see above the water is 16 feet wide?
MR. WILLIAMSON:
Objection to the form of the question.
THE WITNESS:
Yes, I would estimate that to be 15, 16 feet, maybe 17 feet, somewhere along in there.
EXAMINATION BY MR. WEBB:



Q. When the walkway was constructed, are you aware that there was a crane that was used to help construct the walkway?
A. In 1989, yes, they used a crane.
Q. And was the crane supported in part by the weir portion of the jetty?
A. Yes.
Q. And was the crane at some point during construction also supported by the weir portion of the jetty where the geotextile tubes ultimately were placed by Dredge America?
A. Yes.
Q. Do you know what the weight of the crane was?
A. No, I don't.
Q. Do you know how long it was used for the construction of the walkway?
A. I'm going to estimate that job took six months. That's just a guess. And it progressed down the top of the weir.
Q. Down from the shore end?
A. From the shore going seaward.
Q. Going back to the beginning of Dredge America's efforts to install the geotube, do you believe it would have been possible for