# INDEX TO SUPPLEMENTAL APPENDIX

**Exhibit** **Page**

41 Excerpt from deposition transcript of Mike deMasi . . . . . . . . . . . . . . . . . . . . . . . . . . 284

# EXHIBIT
# 41

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

WEEKS MARINE, INC., *
Plaintiff, *
VS. * NO. 02-225C
THE UNITED STATES, *
Defendant. *

ORAL DEPOSITION OF
MICHAEL J. deMASI
NOVEMBER 20, 2002

Oral deposition of MICHAEL J. deMASI, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on November 20, 2002, from 9:31 a.m. to 12:19 p.m., before Jeanette L. Jordan, CSR in and for the State of Texas, reported stenographically, at the office of the U.S. Army Corps of Engineers, Galveston, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



APPEARANCES

ATTORNEYS FOR PLAINTIFF:
Miller Law Firm
4310 Madison Avenue
Kansas City, Missouri 64111
By: MR. DANNE W. WEBB

ATTORNEYS FOR DEFENDANT:
MR. JOHN WILLIAMSON
Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

ALSO PRESENT:

Mr. Dan McDougal
Mr. Donald William Careiock

REPORTED BY:
Ms. Jeanette L. Jordan, CSR

284



EXAMINATION INDEX


| QUESTIONS BY | PAGE |
|---|---|
| Mr. Webb | 05 |
| Mr. Williamson | 89 |
| Mr. Webb | 94 |


INDEX OF EXHIBITS


| NO. | MARKED | DESCRIPTION |
|---|---|---|
| 16 | 16 | E-mail from Mr. deMasi with attached photographs |
| 17 | 27 | Photograph of jetty surface |
| 18 | 31 | Project engineer's project notebook |
| 19 | 32 | Original sheet drawing of jetty-weir |
| 20 | 33 | Original sheet drawing of jetty-weir |
| 21 | 36 | Sheet No. 1 Mouth of Colorado River and Impoundment Basin |
| 22 | 36 | Sheet No. 1 Mouth of Colorado River and Impoundment Basin with change |
| 23 | 40 | Drawing to accompany Amendment No. 1 |
| 24 | 42 | Diagram of cross-sections 34 plus 300 to 35 plus 300 |
| 25-26 | 42 | Various project drawings |
| 27 | 43 | Bid abstract |
| 28 | 49 | Cross-section diagram |
| 29 | 50 | Cross-section diagram |




INDEX OF EXHIBITS
(Continued)


| NO. | MARKED | DESCRIPTION |
|---|---|---|
| 30 | 63 | Profile of jetty-weir |
| 31 | 70 | Fax from Mr. deMasi to John Morris with attached Sheets 1 and 2 |
| 32 | 91 | Photograph of surface of weir-jetty |

Q: (By Mr. Williamson) You've been involved in a number of contracts on behalf of the Corps of Engineers, correct?
A: Correct.
Q: Have you ever been involved in a contract in which photographs of the site that was the subject of a competitive bid were provided to the contractors who were bidding on the project?
A: Never. The contractor is responsible for his own site investigations prior to bidding.
Q: Are there any concerns that you understand, based on your experience, with providing pictures of the site to contractors?
A: The problem with providing pictures is you're trying to make a representation of the — of whatever the contract may be with a few pictures, and what the contractor sees in a picture may be different from what you're actually trying to show, so — and also the fact that if you provide pictures to one contractor you have to provide it to all the contractors and possibly any subcontractor that may be involved in a project, and that's almost not possible.
MR. WILLIAMSON: I have no further questions.



EXAMINATION
BY MR. WEBB:

Q: Let me follow up on that a little bit, Mr. deMasi. The documents that accompanied Amendment 1 included a sketch of the site, correct?
A: Correct.
Q: And that sketch was provided to all contractors, correct?
A: It was provided to everybody on the bidding list, as far as I know.
Q: And the purpose of that drawing was to provide information to the contractors about what the site looked like, correct?
A: Correct.
Q: And in fact, the Corps prepared that sketch knowing that the contractors would be using that sketch in preparing their bids or deciding whether or not to bid this project, correct?
MR. WILLIAMSON: Object to the form of the question.
A: I would hope they would only use that as part to preparing their bid.
Q: (By Mr. Webb) But that was something that they were specifically provided by the Corps as part of their bid, correct?



A: Correct.
Q: Is it your testimony that the photographs more accurately depict the condition of the jetty-weir than Sketch 1?
MR. WILLIAMSON: Objection to the form of the question.
A: No.
Q: (By Mr. Webb) They don't?
A: (Witness shakes head)
Q: Is it your position that the two are entirely consistent with each other?
MR. WILLIAMSON: Objection to the form of the question.
A: Yeah.
Q: (By Mr. Webb) Are you aware of — well, let me ask you this: What was the tide level on January 6th, 2000 when you took your photos?
A: I have no idea.
Q: Any way you can tell from the photos?
A: No.
Q: How did you know to go out there on that day?
A: Watched the weather.
Q: What did you watch for?
A: Northern front.
Q: Is that all?



A: That's it.
Q: So when the northern front came through, you knew that the tide would be low enough to allow you to go out and see the pictures or see the scene as depicted in your pictures?
A: Usually.
Q: Okay. If there isn't a northern front — and we're talking about a weather structure that moves through the area, correct?
A: Correct.
Q: If there isn't one of those, what does the scene normally look like?
A: Rougher.
Q: And the tide is higher?
A: (Witness shakes head)
Q: Correct?
A: Usually.
Q: Let me show you some photographs that were marked in earlier depositions as Deposition Exhibit No. 2. And if you compare Exhibit 2 with Exhibit 17, would you agree with me that the tide is higher in the top photo on Exhibit 2 than it is on Exhibit 17?
MR. WILLIAMSON: Objection to the form of the question.
A: Sure. Do you know what the tide was in that