IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WEEKS MARINE, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant, | No. 02-205C<br>(Judge Allegra) |

**DEFENDANT'S CORRECTED**
**CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN H. WILLIAMSON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
ATTN: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972
Email: john.williamson@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

ALEX PETTY
Assistant District Counsel
U.S. Army Corps of Engineers
Galveston District
Jadwin Building
2000 Fort Point Road
Galveston, TX 77550

November 13, 2003

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . iii

INDEX TO SUPPLEMENTAL APPENDIX . . . . . v

STATEMENT OF THE CASE . . . . . 1

I. Nature Of The Case . . . . . 1

II. Statement Of The Facts . . . . . 2

STATEMENT OF THE ISSUES . . . . . 2

SUMMARY OF ARGUMENT . . . . . 3

ARGUMENT . . . . . 4

I. The Government Is Entitled To Summary Judgment . . . . . 4

II. Defendant Is Entitled To Summary Judgment Because As A Matter Of Law, Weeks Marine Fails To Meet At Least Three Of The Six Elements Required To Prove A Differing Site Condition Claim . . . . . 5

A. Weeks Marine Knew That The Surface Of The Jetty Was Not Uniform . . . . . 7

B. Because Irregularities Were Visible In The Beach Portion Of The Jetty, It Was Reasonably Foreseeable That The Weir Portion Of The Jetty Was Irregular, Too . . . . . 10

C. Dredge America's Delays And Unanticipated Costs Were Not Solely Attributable To The Claimed Differing Site Conditions . . . . . 12

III. If The Court Denies Defendant's Cross-Motion For Summary Judgment, Genuine Issues Of Material Fact On Several Elements Of Plaintiff's Differing Site Condition Claim Preclude Entry Of Summary Judgment For Plaintiff . . . . . 15

A. The Conditions Indicated In The Contract Documents Were Not Materially Different Than The Conditions Actually Encountered . . . . . 15

B. Weeks Marine Did Not Conduct An Adequate Site Investigation . . . . . 16

IV. The Superior Knowledge Doctrine Has No Application To This Suit Because Weeks Marine Knew That The Surface Of The Jetty Was Irregular . . . 17

CONCLUSION . . . . . 19

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . 4

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . 4, 5, 10

Barmag Barmer Maschinenfabrik AG v. Murata Machine Ltd.,
731 F.2d 831 (Fed. Cir. 1984) . . . . . 5

Comtrol, Inc. v. United States,
49 Fed. Cl. 294 (2001), aff'd in rel. part, 294 F.3d 1357, 1365
(Fed. Cir. 2002) . . . . . 6

Embrey v. United States,
17 Cl.Ct. 617 (1989) . . . . . 4

Giesler v United States,
232 F.3d 864 (Fed. Cir. 2000) . . . . . 17

H.B. Mac, Inc. v. United States,
153 F.3d 1338 (Fed. Cir. 1998) . . . . . 5, 12

Hardwick Brothers Company, II v. United States,
36 Fed. Cl. 347 (1996) . . . . . 12

Hercules v. United States,
24 F.3d 188 (Fed Cir. 1994) . . . . . 17

Imperial Tobacco Limited v. Phillip Morris, Inc.,
899 F.2d 1575 (Fed. Cir. 1990) . . . . . 5, 9

Kiewit Construction Co. v. United States,
56 Fed. Cl. 414 (2003) . . . . . 6

Manuel Brothers, Inc. v. United States,
55 Fed. Cl. 8 (2002) . . . . . 13

Randa/Madison Joint Venture III v. Dahlberg,
239 F.3d 1264 (Fed. Cir. 2001) . . . . . 5

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Stuyvesant Dredging Co. v. United States,
11 Cl. Ct. 853 (1987), aff'd, 834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . 5, 7

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Turnkey Enterprises, Inc. v. United States,
220 Ct.Cl. 179, 597 F.2d 750 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Vann v. United States,
190 Ct. Cl. 546, 420 F.2d 968 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

W.M. Schlosser, Inc. v. United States,
50 Fed. Cl. 147 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Weeks Dredging & Contracting, Inc. v. United States,
13 Cl.Ct. 193 (1987), aff'd, 861 F.2d 728 (Fed.Cir.1988) . . . . . . . . . . . . . . . . . . . 6, 13, 16

William F. Klingensmith, Inc.v. United States,
731 F.2d 805 (Fed. Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES**

41 U.S.C. §§ 601 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX

**Exhibit No.** **Page**


34 Excerpts from deposition transcript of Hayman Dengler . . . . . . . . . . . . . . . . . . . . . . . 264

35 Additional excerpts from deposition transcript of John Morris . . . . . . . . . . . . . . . . . . . 265

36 Additional excerpts from deposition transcript of Dan McDougal . . . . . . . . . . . . . . . . 271

37 Deposition Exhibit No. 50 (July 29, 2000 Dredge America Daily Report) . . . . . . . . . . 279

38 Deposition Exhibit No. 55 (August 20, 2000 Dredge America Daily Report) . . . . . . . 280

39 Deposition Exhibit No. 60 (September 12, 2000 Dredge America Daily Report) . . . . 281

40 Deposition Exhibit No. 71 (December 5, 2000 letter from Dredge America to Five Star Dredging) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WEEKS MARINE, INC. | |
| Plaintiff, | No. 02-205C |
| v. | (Judge Allegra) |
| THE UNITED STATES, | |
| Defendant, | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully requests the Court to grant summary judgment in favor of the United States upon the ground that there is no genuine issue of material fact in dispute and the Government is entitled to judgment as a matter of law. In support of this motion, defendant relies upon the pleadings, this brief, Defendant's Proposed Findings of Uncontroverted Facts ("Def. PFUF"), certain of Plaintiff's Proposed Findings of Uncontroverted Fact ("Pl. PFUF") and Defendant's Responses thereto ("Def. Resp. to Pl. PFUF"), the Appendix to Plaintiff's Motion for Summary Judgment ("Pl. App."), and the Appendix to Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def. App.").

## STATEMENT OF THE CASE

### I. Nature Of The Case

Weeks Marine asserts a differing site condition claim, seeking review of a contracting officer's final decision dated December 14, 2001 pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601 et seq. The claim arises from a contract awarded by the United States Army Corps of Engineers to dredge the mouth of the Colorado River on the Texas coast, and to install a geotextile tube on a nearby rock jetty. Weeks Marine seeks an equitable adjustment for $1,260,889.00 for increased costs incurred by its subcontractor, Dredge America, for the geotextile tube portion of the project, allegedly as a result of the claimed differing site condition.

Weeks Marine contends that the width and elevation of the jetty were not as indicated in

the contract drawings. As discussed below, there are undisputed facts that Weeks Marine knew or should have known when it bid on the project that the surface of the rock jetty was irregular. Further, it is indisputable that the installation efforts extended over nine month period not because of the claimed differing site conditions, but because of wave action on the jetty, a dredge capsizing twice, and vandalism. For these reasons, summary judgment for defendant is appropriate.

## II. Statement Of The Facts

For our statement of facts, we respectfully refer the Court to Defendant's Proposed Findings of Uncontroverted Facts.

## STATEMENT OF THE ISSUES

1. Whether Weeks Marine is estopped from asserting a Type I differing site condition claim because before it submitted its bid, Weeks Marine learned from two prospective subcontractors that the surface of the jetty where the project was to be performed was irregular.

2. Whether Weeks Marine is estopped from asserting a Type I differing site condition claim because both Weeks Marine and its subcontractor Dredge America conducted pre-bid site visits, and could observe and did observe that the rocks that composed the beach portion of the jetty had substantial gaps and variations in elevation between them as well as having sharp edges and corners and uneven surfaces.

3. Whether Weeks Marine can create a genuine issue of material fact concerning the actual width of the jetty by introducing an unsupported affidavit that is contradicted by the contract drawings and a post-installation survey upon which Weeks Marine relies.

4. Whether Weeks Marine can prove a differing site condition claim when it cannot prove that its claimed excess costs were solely attributable to the claimed differing site condition.

5. Whether the "superior knowledge" doctrine is applicable when Weeks Marine had learned from prospective subcontractors and its own site visit what were the actual conditions where the geotextile tube was to be installed.

## SUMMARY OF ARGUMENT

Weeks Marine cannot show that any genuine issue of material fact exists for at least three of the six elements necessary to prove a Type I differing site condition claim. First, Weeks Marine could not reasonably rely upon any indications in the contract documents that the jetty's surface was uniformly level when Weeks Marine knew that the jetty's surface was irregular before it submitted its bid for the project. Weeks Marine is unable to dispute that it learned from its conversations with two prospective subcontractors that the surface of the weir portion of the jetty, where the geotextile tube was to be installed, is erratic and has jagged rocks.

Second, the actual condition of the jetty surface that Weeks Marine encountered was reasonably foreseeable. Weeks Marine was able to observe during its site visit that the rocks that compose the beach portion of the jetty have significant gaps and changes in elevation between them as well as having irregular surfaces and sharp edges and corners. Weeks Marine's witnesses admitted seeing gaps and irregularities in the rocks, and these features of the beach portion are confirmed by the declaration of Hayman Dengler submitted in support of our motion. Thus, it was reasonably foreseeable that the surface of the weir portion of the jetty where the geotextile tube was to be placed would have similar irregularities.

Third, the irregular surface of the jetty was not the sole cause of the delays that Weeks Marine identifies as its harm. It is undisputed that waves or currents sweeping across the weir portion of the jetty was the cause or at least a concurrent cause of all of Dredge America's failed attempts to install the geotextile tube. Other factors unrelated to the claimed differing site condition, such as Dredge America's dredge capsizing twice, and vandals attacking the geotextile tube, also caused delays in the completion of the project. For these reasons, defendant is entitled to summary judgment.

If the Court denies defendant's cross-motion for summary judgment, genuine issues of material fact exist for several other elements of plaintiff's differing site condition claim. First, the conditions indicated in the contract documents were not materially different than the conditions actually encountered. Second, Weeks Marine did not conduct an adequate site

investigation.

Finally, because Weeks Marine knew the condition of the jetty, it cannot succeed in its claim that the Government had superior knowledge of the site conditions.

## ARGUMENT

### I. The Government Is Entitled To Summary Judgment

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. Rule 56 of the Rules of the Court of Federal Claims (RCFC); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). It is "a salutary method of disposition 'designed to secure the just, "speedy and inexpensive determination of every action."'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

Facts are material only if they "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Substantive law provides the basis to identify the material facts. Embrey v. United States, 17 Cl. Ct. 617 (1989). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Celotex obliges a plaintiff to "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof . . . at trial." Id. at 322. Thus, a failure of proof concerning an essential element of the non-moving party's case entitles the moving party to a legal judgment. Id. at 323.

As the Court of Appeals for the Federal Circuit emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court of Federal Claims] -- that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325.). The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the non-moving party's case. Celotex, 477 U.S. at 331.

The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact set forth in detail in an affidavit by a knowledgeable affiant. Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984). It is well settled that self-serving conclusory statements as to the ultimate issue asserted by a contractor's witnesses cannot raise a genuine issue of material fact. Imperial Tobacco Limited v. Phillip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990) (citing Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1564 (Fed. Cir. 1987)); RCFC 56.

In this case, the relevant facts are either not in dispute, or are not subject to a genuine dispute given the evidence presented in the appendix to this motion. Additionally, Weeks Marine fails to make a showing sufficient to establish the existence of three elements essential to a successful differing site claim. If Weeks Marine fails to provide sufficient evidence to raise a genuine issue of material fact in each of these elements, then summary judgment is appropriate in favor of the government. Celotex, 477 U.S. at 325.

## II. Defendant Is Entitled To Summary Judgment Because As A Matter Of Law, Weeks Marine Fails To Meet At Least Three Of The Six Elements Required To Prove A Differing Site Condition Claim

The Federal Circuit has ruled that to establish entitlement to an equitable adjustment because of a Type I differing site condition, "the contractor must prove, by a preponderance of the evidence, that the conditions indicated in the contract differ materially from those it encounters during performance." Randa/Madison Joint Venture III v. Dahlberg, 239 F.3d 1264, 1274 (Fed. Cir. 2001) (quoting H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998) and Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed. Cir. 1987)).

This Court has required a contractor to meet each of the following six elements to prove a

Type I differing site condition claim:

> (i) the contract documents must have affirmatively indicated or represented the subsurface conditions which form the basis of the plaintiff's claim; (ii) the contractor must have acted as a reasonably prudent contractor in interpreting the contract documents; (iii) the contractor must have reasonably relied on the indications of subsurface conditions in the contract; (iv) the subsurface conditions actually encountered, within the contract site area, must have differed materially from the subsurface conditions indicated in the same contract area; (v) the actual subsurface conditions encountered must have been reasonably unforeseeable; and (vi) the contractor's claimed excess costs must be shown to be solely attributable to the materially different subsurface conditions within the contract site.

Weeks Dredging & Contracting, Inc. v. United States, 13 Cl.Ct. 193, 218 (1987) (emphasis in original), aff'd, 861 F.2d 728 (Fed. Cir. 1988); Kiewit Constr. Co. v. United States, 56 Fed. Cl. 414, 423 (2003); W.M. Schlosser, Inc. v. United States, 50 Fed.Cl. 147, 153 (2001); Comtrol, Inc. v. United States, 49 Fed. Cl. 294, 299-300 (2001), aff'd in rel. part, 294 F.3d 1357, 1365 (Fed. Cir. 2002); Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 94 (1989).

Weeks Marine cannot show that any genuine issue of material fact exists for at least three of these six elements. First, Weeks Marine could not reasonably rely upon any indications in the contract documents that the jetty's surface was uniformly level when Weeks Marine knew that the jetty's surface was irregular before it submitted its bid for the project. Weeks Marine is unable to dispute that it learned from its conversations with two prospective subcontractors that the surface of the weir portion of the jetty, where the geotextile tube was to be installed, is erratic and has jagged rocks.

Second, the actual condition of the jetty surface that Weeks Marine encountered was reasonably foreseeable. Weeks Marine was able to observe during its site visit that the rocks that compose the beach portion of the jetty have significant gaps and changes in elevation between them as well as having irregular surfaces and sharp edges and corners. Weeks Marine's witnesses admitted seeing gaps and irregularities in the rocks, and these features of the beach portion are confirmed by the declaration of Hayman Dengler submitted in support of our motion. Thus, it was reasonably foreseeable that the surface of the weir portion of the jetty where the geotextile tube was to be placed would have similar irregularities.

Third, the irregular surface of the jetty was not the sole cause of the delays that Weeks Marine identifies as its harm. It is undisputed that waves or currents sweeping across the weir portion of the jetty was the cause or at least a concurrent cause of all of Dredge America's failed attempts to install the geotextile tube. Other factors unrelated to the claimed differing site condition, such as Dredge America's dredge capsizing twice, and vandals attacking the geotextile tube, also caused delays in the completion of the project. For these three reasons, defendant is entitled to summary judgment.

**A. Weeks Marine Knew That The Surface Of The Jetty Was Not Uniform**

Weeks Marine is precluded from pursuing its differing site condition claim because it knew that the surface of the weir portion of the jetty was not uniform. "'It is the rule that a contractor who knows or should have known the facts of the conditions at the site is estopped to claim a changed condition. Where he knows or has opportunity to learn the facts, he is unable to prove . . . that he was misled by the contract.'" Stuyvesant Dredging Co. v. United States, 11 Cl. Ct. 853, 859 (1987), aff'd, 834 F.2d 1576, 1582 (Fed. Cir. 1987) (quoting Vann v. United States, 190 Ct. Cl. 546, 420 F.2d 968, 982 (1970)).

Weeks Marine contends that it was misled by a sketch of the weir provided to bidders in the contract documents. Plaintiff's Brief In Support Of Its Motion For Summary Judgment ("Pl. Br.") 3-4. However, Weeks Marine is estopped from relying upon its interpretation of the sketch because, before it bid on the project to install the geotextile tubes, it obtained information about the actual condition of the weir. Rick Smith is the Chief Civil Engineer of Weeks Marine, and has responsibility for reviewing all estimates before Weeks Marine submits bids on projects. Def. PFUF ¶ 8. Mr. Smith spoke with two prospective subcontractors, Scott Glick of J&S Contractors and Waymon Boyd of King Fisher, about performing the geotextile tube portion of the contract to dredge the mouth of the Colorado River. Def. PFUF ¶¶ 11-31. Both subcontractors were located in Texas, and had extensive marine construction experience along the Texas coast, including installing geotextile tubes. Id. ¶¶ 11, 13, 21-23.

King Fisher sent people to visit the site for the whole project (dredging and the geotextile

tube), but had determined not to bid on the project. Id. ¶¶ 14-15. Mr. Boyd told Mr. Smith that the geotextile tube project was a very high risk job because of the weather conditions and the erratic surface of the jetty. Id. ¶ 17. Mr. Boyd told Mr. Smith that the surface of the jetty was not smooth, but had ups and downs and was very erratic, and could even have some sharp points that would stick into the tube and tear it. Id. ¶ 18. Mr. Boyd had seen the weir portion of the jetty in the late 1980s when the tide was low, and knew that the surface of the jetty was really worse after you got away from the shore. Id. Some of the rocks were bigger and some were smaller, and there were voids between the rocks. Id.

Mr. Glick, too, had seen the jetty when he went there for at least two site visits before he submitted a bid to Weeks Marine. Id. ¶ 23. From the elevated walkway that ran parallel to the weir portion of the jetty, he observed constant wave action breaking across the weir portion of the jetty. Id. Mr. Glick could also see 10-feet square or 10-by-20 feet sections of the weir composed of "plenty" of individual rocks. Id. ¶ 24. The rocks did not appear to be at the same level as in a sidewalk. Id. He could see that the weir was fairly irregular, and that there were rocks that looked fairly sharp. Id. He could also see gaps of a foot or more between the rocks. Id.

Mr. Glick talked to Rick Smith about how it would be very difficult or virtually impossible because of the wave action to install a geotextile tube on top of the jetty. Id. ¶ 26. Mr. Glick also thought that the jagged rocks on the jetty might tear the geotextile tube. Id. ¶ 24. The quote that Mr. Glick's company sent to Weeks Marine on February 2, 2000 stated that J&S Contractors would not warranty the geotextile tube during installation from tears "by rocks or damage by wave action," although Mr. Glick struck out those words and substituted "or damage from any source," which he thought was more encompassing. Id. ¶ 30. Because Mr. Glick addressed in the bid that he submitted to Weeks Marine the risk of the geotextile tubes being torn by the rock surface of the jetty, Mr. Smith thinks it is possible that he discussed that subject with Mr. Glick. Id. ¶ 31.

On January 28, 2000, Mr. Smith called the Corps of Engineers, and spoke to Wade

Anderson, who had assisted in the preparation of the geotextile tube amendment. Id. ¶ 32. Mr. Anderson recorded his conversation with Mr. Smith in an email that he sent later that same day. Id. ¶ 33. Mr. Smith told Mr. Anderson that Mr. Smith had spoken about the geotextile tube project with Mr. Glick and Mr. Boyd, and that he was forwarding their concerns about the project. Id. ¶ 34. Mr. Smith told Mr. Anderson that Messrs. Glick and Boyd were afraid that it would be very difficult to place the geotextile tube on the weir in the rough waters, that the tube might be damaged by the irregular rock on the weir while the tube was being filled, and that there was risk to laborers trying to hold the tube during filling. Id. ¶ 35.

The uncontradicted testimony of Mr. Boyd and Mr. Glick, and the declaration submitted by Mr. Anderson, show that Weeks Marine knew that the elevation of the weir portion was not a uniform 0.0' mean low tide, but had substantial variations. Thus, Weeks Marine is estopped from now arguing that it could reasonably rely upon its interpretation of the sketch, and disregard actual knowledge about irregularities in the surface of the weir. Pl. Br. 3-4. Because Weeks Marine knew that the surface of the jetty was not uniform, it is irrelevant that the Government did not provide as-built surveys and photographs of the survey showing that the elevation of the surface of the jetty varied. If Weeks Marine failed to share with Dredge America what Weeks Marine learned about the condition of the jetty from the other prospective subcontractors, then the Government should not be held liable to Weeks Marine for a differing site condition claim. It is Weeks Marine, not Dredge America, which contracted with the Government, and which is the plaintiff in this suit.

Weeks Marine also asserts incorrectly that the width of the jetty differed materially from the 26 feet shown on Sketch 1. Pl. Br. 4. Weeks Marine's assertion that the width was "estimated by the Government" to be about 16 feet wide is not supported even by Weeks Marine's own version of the facts, which cites an affidavit of Dredge America's Dan McDougal that makes no reference to any estimate by the Government. Id. citing Pl. PFUF ¶ 96 and Pl. App. p. 74, ¶ 8. Mr. McDougal offers no support for his assertion that the jetty "was between 16 and 18 feet wide." Pl. App. p. 74, ¶ 8.

Moreover, Mr. McDougal's assertion is contradicted by the post-installation survey on which Weeks Marine relies. In the plan view of the survey, there are two parallel dotted lines labeled "APPROXIMATE LIMITS OF JETTY" that are approximately 1¼" apart. Pl. App. p. 89. The scale of the plan view of the survey is 1" = 20'. Id. Applying this scale to the limits of the jetty, the plan view of the post-installation survey indicates that the jetty is approximately 25 feet wide. Thus, there is no evidence that the width of the jetty differed materially from that shown in Sketch 1. Mr. McDougal's unsupported affidavit is insufficient to introduce a genuine issue of material fact. Imperial Tobacco, 899 F.2d at 1581.

Weeks Marine has failed to offer any affirmative evidence to suggest that it was unaware of the condition of the jetty prior to its bid. The Government does not need to prove the absence of any genuine issue of material fact, but need only show that Weeks Marine has not put forth evidence to satisfy a prima facie claim of differing site conditions. Celotex, 477 U.S. at 325. The burden then shifts to Weeks Marine to provide any affirmative evidence that it did not have knowledge of the differing site conditions. Id. Therefore, Weeks Marine fails to meet its burden of proof for this particular element of a differing site claim. If Weeks Marine is unable to provide sufficient affirmative evidence to meet its burden of proof, then summary judgment on behalf of the Government is appropriate.

**B. Because Irregularities Were Visible In The Beach Portion Of The Jetty, It Was Reasonably Foreseeable That The Weir Portion Of The Jetty Was Irregular, Too**

Before Weeks Marine and Dredge America submitted bids, their respective representatives Chuck Broussard and John Morris visited the site where the geotextile tube was to be installed. Def. PFUF ¶¶ 38-60. From the elevated walkway that ran parallel to the weir portion of the jetty, Mr. Broussard could see between waves as much as 10-feet-wide sections of the weir. Id. ¶ 46. Mr. Morris also visited the elevated walkway, and could see between troughs of waves one or two rectangular blocks of the weir. Id. ¶ 55.

Despite constant wave action breaking across the weir portion of the jetty, Scott Glick of J&S Contractors was able to determine during his site visit that the portions of the weir that he

could see from the elevated walkway were fairly irregular, and that there were rocks that looked fairly sharp. Id. ¶ 24. Even if neither Mr. Broussard or Mr. Morris reached this determination from their own visits to the elevated walkway, they were able to see the beach portion of the jetty, which was completely above the waterline. Based upon what Mr. Broussard and Mr. Morris were able to observe about the beach portion of the jetty, it was reasonably foreseeable to Weeks Marine or any other prospective contractor that there were substantial gaps and differences in the elevation of the surface of the weir.

Mr. Broussard of Weeks Marine could see gaps between the rocks that formed the beach portion of the jetty. Id. ¶ 44. During his deposition, he agreed that Sketch 1 does not show any gaps between the rocks that form the weir portion of the jetty. Id.

Mr. Morris of Dredge America walked on the beach portion of the jetty up to the water's edge. Id. ¶ 53. He observed spaces between the rocks that composed the beach portion of the jetty, as well as irregularities in the surface of the rocks. Id. He had to watch where he was stepping, and did not want to fall down on the rocks. Id. Mr. Morris understood from his site inspection that the cover stone of the jetty had burrs and protrusions, such as barnacles and irregularities in the cut surface of the stone. Id. ¶ 56.

Both Mr. Broussard and Mr. Morris testified that based upon what they could see of the weir portion of the jetty, they thought that it looked the same as the beach portion. Id. ¶¶ 46, 55. Weeks Marine similarly asserts in its brief that "Dredge America anticipated that the conditions in the water would be the same as those depicted in the photographs on the shore." Pl. Br. 6.[1] Yet, as is apparent from the declaration of Hayman Dengler and the accompanying photographs and video, there are substantial gaps between individual rocks in the beach portion of the jetty, and substantial differences in elevation between individual rocks. Id. ¶ 45. In addition, the rocks have sharp corners and edges and uneven surfaces. Id. ¶ 54.

[1] The photographs referred to in Weeks Marine's brief are not identified in plaintiff's Proposed Findings of Uncontroverted Facts, but appear to be the photographs of the beach portion of the jetty included in plaintiff's claim (Depo Ex. 2), not the photographs that accompany Mr. Dengler's declaration.

Thus, because of Mr. Broussard's observations and his conclusion that the weir portion of the jetty looked the same as the beach portion, it was reasonably foreseeable to Weeks Marine that the surface of the weir was at least as irregular as the beach portion. If anything, it was reasonably foreseeable that the surface of the weir would be more irregular than the beach portion of the jetty, because the weir was constructed under water, where it would have been more difficult during construction of the jetty to place accurately the large granite blocks, some of which weigh 12-14 tons. Id. ¶ 46.

Moreover, it is not necessary for the Government to show that Mr. Broussard or Mr. Morris actually observed the irregular surface of the beach portion of the jetty. "It is well-settled that a contractor is charged with knowledge of the conditions that a pre-bid site visit would have revealed." H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1346 (Fed. Cir. 1998) (citing Hardwick Bros. Co., II v. United States, 36 Fed. Cl. 347, 406 (1996)). This is especially appropriate when, as here, Sketch 1 stated that "CONTRACTOR IS ENCOURAGED TO VISIT SITE FOR GEOTEXTILE TUBE PLACEMENT," and the contract contained the standard Federal Acquisition Regulations ("FAR") site investigation clause, FAR 52.236-3. Pl. App. pp. 2, 84; Def. PFUF ¶ 2. As demonstrated by the photographs and video that accompany Mr. Dengler's declaration, any pre-bid site visit to the jetty would have revealed the irregular nature of the beach portion of the jetty to a prospective contractor. Weeks Marine is charged with this knowledge, and cannot now claim that it was unable to discern anything about the conditions of the surface of the weir.

**C. Dredge America's Delays And Unanticipated Costs Were Not Solely Attributable To The Claimed Differing Site Conditions**

In its motion for summary judgment, Weeks Marine asserts that the claimed differing site conditions "made installation of the geotube exceedingly difficult and time consuming," causing the project to last nine months rather than 30 days. Plaintiff's Motion For Summary Judgment ("Pl. Mot.") 2. Weeks Marine's brief and Proposed Findings of Uncontroverted Fact, however, lack any support for this assertion, and, thus, do not raise a genuine issue of material fact

sufficient to preclude entry of summary judgment for defendant.[2] A contractor's claimed excess costs must be shown to be solely attributable to the materially different subsurface conditions within the contract site. Weeks Dredging, 13 Cl. Ct. at 240-41 (citing William F. Klingensmith, Inc. v. United States, 731 F.2d 805, 809 (Fed. Cir.1984)). The court focuses only on those damages directly attributable to the alleged differing site condition, and not on those damages for which concurrent causes are also to blame. Weeks, 13 Cl. Ct. at 240.

It is undisputed that wave action or currents sweeping across the weir portion of the jetty was the cause or at least a concurrent cause of all of Dredge America's failed attempts to install the geotextile tube. Rick Smith and Chuck Broussard of Weeks Marine as well as Dan McDougal and John Morris of Dredge America all regarded wave action as one of the principal challenges to installing a geotextile tube on top of the jetty. Def. PFUF ¶¶ 9, 40, 58, 64-65. Indeed, it was the wave action that Weeks Marine and Dredge America contend prevented them from being able to see the weir portion of the jetty. Id. ¶¶ 46, 55. Dredge America intended to wait to install the geotextile tube until a slack period when wave action abated. Id. ¶ 66.

Weather conditions generally are considered to be acts of God, for which neither party is deserving of compensation. Turnkey Enters., Inc. v. United States, 220 Ct.Cl. 179, 186, 597 F.2d 750, 754 (1979). The Government, under a differing site conditions clause, does not assume an obligation to compensate a contractor for additional costs or losses it incurs resulting from weather conditions. Manuel Bros., Inc. v. United States, 55 Fed.Cl. 8, 44 (2002). Although this clause is a risk-shifting device, it is not designed to shift all weather-related risks to the Government. Turnkey Enters., 220 Ct. Cl. at 186-87, 597 F.2d at 754. The site investigation clause in the contract specifically required Weeks Marine to investigate "uncertainties of weather, river stages, tides, or similar physical conditions at the site." Def. PFUF ¶ 2.

On June 29, 2000, Dredge America made its first attempt to install the geotextile tube.

---

[2] Weeks Marine also presents no factual support for its assertion that the irregular surface of the weir "created safety hazards for the equipment and the men working." Pl. Br. 5, citing Pl. PFUF ¶¶ 100-103. The cited portions of plaintiff's Proposed Findings Of Uncontroverted Facts contain no mention of safety hazards.

The attempt, which was made from a boat, was abandoned because the currents and the waves swept the tube off the weir portion of the jetty. Id. ¶ 78. On July 18, 2000, rough seas caused the cancellation of the next attempt. Pl. PFUF ¶ 84. On July 27, 2003, while Dredge America attempted to install the geotextile tube by lowering it from the elevated walkway, the wind and surf conditions increased considerably, and the anchor lines holding the tube to the elevated walkway came loose, allowing the surf to wash over 100 feet of the tube off the weir. Def. PFUF. ¶ 80. It took until September 7, 2000 – over a month – to obtain replacement tubes. Id. ¶ 83. Meanwhile, Dredge America's dredge capsized on July 29, 2000 while it was idle, and required repairs before it could be returned to use on the project. Id. ¶¶ 88-89. None of these delays were solely attributable, or attributable at all, to the alleged differing conditions in the elevation and width of the weir.

On September 18, 2000, the tubes were set up on the walkway and ready to go in the water but the seas were again too rough. Pl. PFUF ¶ 89. The next scheduled attempt to install the tubes, on September 25, 2000, could not proceed because vandals slashed the tubes during the night. Def. PFUF ¶ 93. After a replacement for one tube was delivered to the job site, and the other two tubes were repaired, yet another attempt to install the tubes was made on November 9, 2000. Id. ¶ 98. This attempt too was unsuccessful because of unforeseen difficulties managing the floating line used to fill the tubes, and because of strong currents moving west to east across the surface of the weir, which were 180 degrees different than the currents that had been present in the previous failure to deploy the tubes. Id. ¶ 99.

A few days later, on November 14, 2000, Dredge America's dredge capsized for a second time. Id. ¶ 102. Once Dredge America subcontracted with Five Star Dredging to provide a new dredge and ran its pipeline down the jetty walkway, all three geotextile tubes were installed and accepted by the Corps of Engineers, even though the post-installation survey showed that only one of the three tubes had an elevation of approximately 2.0-3.0 feet above mean low tide. Id. ¶¶ 103-118.

None of these failed attempts to install the geotextile tubes was caused by the claimed

differing site conditions. None of the contemporaneous letters and daily reports that Dredge America prepared identified the width of the weir as posing any of the problems that Weeks Marine now asserts. Id. ¶¶ 84-85. Dredge America did not tell Weeks Marine either orally or in writing that irregularities in the surface of the jetty caused the failure of the attempt on July 27, 2000. Id. ¶¶ 86-87. In sum, it is undisputed that there were no failed attempts to install the geotextile tubes solely attributable to either the width or the varying elevation of the weir's surface. For this reason and the others stated above, the Court should enter summary judgment for defendant.

## III. If The Court Denies Defendant's Cross-Motion For Summary Judgment, Genuine Issues Of Material Fact On Several Elements Of Plaintiff's Differing Site Condition Claim Preclude Entry Of Summary Judgment For Plaintiff

### A. The Conditions Indicated In The Contract Documents Were Not Materially Different Than The Conditions Actually Encountered

Weeks Marine begins its motion for summary judgment from the erroneous premise that Sketch 1 of the contract documents showed the weir to have a uniform elevation of 0.0 feet mean low tide. Pl. Br. 3. However, as Wade Anderson, Ronnie Barcak, and Mike deMasi of the Corps of Engineers noted in their depositions, Sketch 1 uses in two places the word "VARIES" and a double-headed arrow to show variations both up and down in the dimensions of the rocks that compose the cover stone and the blanket stone of the weir. Def. Resp. to Pl. PFUF Nos. 39, 56; Pl. App. p. 2. This indicates that the "ELEV. 0.0' MLT" legend does not mean that the elevation of the weir is 0 feet mean low tide at all points on its surface. As discussed above in section "II.A.," plaintiff's assertion that the weir portion of the jetty is only 16 to 18 feet wide is also erroneous. Thus, plaintiff's contention that the conditions indicated in the contract were materially different than those actually encountered at the site is mistaken. At a minimum, there is a genuine issue of material fact concerning whether the indicated conditions were materially different than those encountered.

**B. Weeks Marine Did Not Conduct An Adequate Site Investigation**

Weeks Marine also contends erroneously that "site inspections failed to reveal the differing site conditions." Pl. Br. 7. As discussed above in Section "II.B.," as a matter of law it was reasonably foreseeable to Weeks Marine that the surface of the weir would be at least as irregular as the beach portion of jetty, which was entirely above water. Further, there is a genuine issue of material fact concerning whether Weeks Marine and Dredge America conducted an adequate site investigation, as they were required to do pursuant to the site investigation clause of the contract, FAR 52-236.3. "[T]o a large extent, what the contractor knew or should have known about the subsurface materials depends upon the reasonableness of its pre-bid site investigation." Weeks Dredging, 13 Cl. Ct. at 236. In Weeks Dredging, this Court ruled that the contractor conducted an inadequate investigation because it only made an inspection by foot of a few accessible portions of a river bank, and among other shortcomings, "failed to procure a boat to traverse the entire river channel and view all exposed portions of the river bank; [and] failed to contact or interview any adjacent land owners, gravel operators, or other dredge contractors in reasonably contiguous portions of the river regarding subsurface materials." Id.

Weeks Marine and Dredge America could have readily investigated the surface of the weir during their site visits. They did not even need a boat. They could have simply walked out onto the weir from the beach portion of the jetty. John Morris testified that he could have done this without fear of losing his footing, but that he did not consider it necessary to get wet. Def. PFUF ¶ 57. Scott Glick also testified that one could walk out on the weir. Id. ¶ 25. The mean sea level at the jetty (mid-way between high and low tide) in calm conditions is approximately seventeen inches above 0.0 feet mean low tide, the approximate elevation of most portions of the weir. Def. App. p. 6, Dengler Decl. ¶ 4. Waymon Boyd testified that if King Fisher had intended to bid the geotextile tube project, it would definitely have put people in wetsuits and walked the portion of the weir where the tube would be installed. Def. PFUF ¶ 16. After contract award, Dredge America had an employee walk and in some portions swim along the weir. Id. ¶ 74. Thus, Weeks Marine and Dredge America could have and should have explored the irregular

surface of the weir during their pre-bid site visits.

In addition, Weeks Marine and Dredge America failed to speak with other dredging contractors or other commercial operators in the area about the surface of the jetty. John Morris spoke to the operator of an RV park and a bait shop about the general weather conditions, but he did not ask these people whether they had an experience working around the jetty or any knowledge of its surface, nor did he consult any contractors. Id. ¶ 60. Thus, there is compelling evidence and consequently a genuine issue of material fact concerning whether Weeks Marine and Dredge America failed to conduct a reasonable site investigation, and thus did not comply with the site investigation clause in the contract, FAR 52.236-3.

## IV. The Superior Knowledge Doctrine Has No Application To This Suit Because Weeks Marine Knew That The Surface Of The Jetty Was Irregular

Plaintiff fails to meet a number of the elements required to prove a claim pursuant to the superior knowledge doctrine.

> The superior knowledge doctrine imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance. The doctrine of superior knowledge is generally applied to situations where: (1) a contractor undertook to perform without vital knowledge of a fact that affects performance costs or duration; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor or did not put it on notice to inquire; and (4) the government failed to provide the relevant information.

Giesler v United States, 232 F.3d 864, 876 (Fed. Cir. 2000) (citing Hercules v. United States, 24 F.3d 188, 196 (Fed. Cir. 1994)).

First, as discussed above in section "I.A.," Weeks Marine knew that the surface of the weir portion of the jetty was irregular. Moreover, because of Mr. Smith's January 28, 2000 telephone call to Mr. Anderson, it is undisputed that the Government knew that Weeks Marine was aware of the irregular surface of the weir before Weeks Marine submitted its bid for the project. For this reason alone, Weeks Marine cannot meet either the first or second elements of a superior knowledge claim, and that claim fails as a matter of law. As discussed above in section "I.A.," Mr. McDougal's unsupported affidavit regarding the width of the jetty is insufficient to

preclude entry of summary judgment for defendant.

Further, there is no genuine issue of material fact that the width of the weir or variations in the elevation of its surface affected performance costs of the duration of the geotextile tube project. As discussed above in Section "I.C.," other factors such as wave action, multiple capsizings of Dredge America's dredge, and vandals were the exclusive or at least concurrent causes of the project delays.

Finally, Weeks Marine inaccurately describes the experimental nature of the geotextile project. Pl. Br. 11. The Corps of Engineers did not design this project as an experiment to determine whether a contractor could install a geotextile tube on top of a rock jetty, as plaintiff suggests. Id. The experiment was to see whether, once a geotextile tube was installed on the weir, the tube would temporarily block the drift of sand across the weir and into the shipping channel into the mouth of the Colorado River. Def. Resp. to Pl. PFUF ¶ 5. The technique for installing a geotextile tube was not specified in the contract documents, but was left to the contractor to determine. The "0.0' MLT" elevation on Sketch 1 was only relevant to determining whether the installed geotextile tube would block the drifting sand. The elevation of the weir was not relevant to whether the geotextile tube could be installed successfully on top of the jetty.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court grant summary judgment in its favor, and enter an order dismissing the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s David M. Cohen

DAVID M. COHEN
Director

/s John H. Williamson

JOHN H. WILLIAMSON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
ATTN: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972
Email: john.williamson@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

ALEX PETTY
Assistant District Counsel
U.S. Army Corps of Engineers
Galveston District
Jadwin Building
2000 Fort Point Road
Galveston, TX 77550

November 13, 2003

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 13th day of November, 2003, a copy of the foregoing "DEFENDANT'S CORRECTED CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s John H. Williamson