IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WEEKS MARINE, INC., Plaintiff, v. THE UNITED STATES, Defendant, | No. 02-205C (Judge Allegra) |

# DEFENDANT'S MOTION IN LIMINE

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

ALEX PETTY
Assistant District Counsel
U.S. Army Corps of Engineers
Galveston District
Jadwin Building
2000 Fort Point Road
Galveston, TX 77550

JOHN H. WILLIAMSON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
ATTN: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972
Email: john.williamson@usdoj.gov

March 1, 2005

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I. The Court Should Preclude Weeks Marine From Using The Total Cost Method To Prove Damages, And From Relying Upon Portions Of Exhibits 123 And 209 . . . . . . . . . . 2

II. The Court Should Exclude Exhibit 300 Because It Was Not Disclosed During Fact Or Expert Discovery, And Is Hearsay . . . . . . . . . . 5

III. The Court Should Exclude Any Testimony By Weeks Marine's Expert Regarding Irrelevant Subjects Or Ultimate Legal Questions To Be Decided By The Court . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . 11

## TABLE OF AUTHORITIES

### CASES

Baskett v. United States,
2 Cl. Ct. 356 (1983) . . . . . . . . . . 1

Christiansen v. City of Tulsa,
332 F.3d 1270 (10th Cir. 2003) . . . . . . . . . . 10

Giesler v. United States,
232 F.3d 864 (Fed. Cir. 2000) . . . . . . . . . . 11

Hi-Shear Technology Corp. v. United States,
356 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . 3, 5

Joy v. Bell Helicopter Textron, Inc.,
999 F.2d 549 (D.C. Cir. 1993) . . . . . . . . . . 10

Kolmes v. World Fibers Corp.,
107 F.34 1534 (Fed. Cir. 1997) . . . . . . . . . . 9

Kumho Tire Co., Ltd. v. Carmichael,
526 U.S. 137 (1999) . . . . . . . . . . 10

Mendenhall v. Cedarapids, Inc.,
5 F.3d 1557, 1574 (Fed. Cir. 1993) . . . . . . . . . . 10

Nutrition 21 v. United States,
930 F.2d 867 (Fed. Cir.1991) . . . . . . . . . . 10

Propellex Corp. v. Brownlee,
342 F.3d 1335 (Fed. Cir.2003) . . . . . . . . . . 3

Raytheon Co. v. White,
305 F.3d 1354 (Fed. Cir. 2002) . . . . . . . . . . 3

Tritek Technologies, Inc. v. United States,
___ Fed. Cl. ___, 2005 WL 318688 (Feb. 7, 2005) . . . . . . . . . . 7

White Mountain Apache Tribe of Arizona v. United States,
10 Cl. Ct. 115 (1986) . . . . . . . . . . 1

### TREATISE

3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEEKS MARINE, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-205C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |

**DEFENDANT'S MOTION IN LIMINE**

Pursuant to the Court's November 16, 2004 order and Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully files this motion in limine. This Court possesses the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence. Baskett v. United States, 2 Cl. Ct. 356, 359 (1983); White Mountain Apache Tribe of Arizona v. United States, 10 Cl. Ct. 115, 116 (1986).

**PRELIMINARY STATEMENT**

Our motion in limine addresses three issues. First, we respectfully request the Court to preclude Weeks Marine from proving its direct costs or Eichleay overhead calculation using the total cost method of recovery. In its Appendix A list of trial exhibits, Weeks Marine failed to identify any evidence that proves that it has met the four requirements for using the total cost method. Moreover, the only trial exhibits identified by Weeks Marine that state its claimed costs, Exhibits 123 and 209, do not apportion Weeks Marine's claimed costs to distinguish costs that Weeks Marine attributes to the alleged differing site conditions, from costs that indisputably resulted from causes not attributable to the Government, such as the September 26, 2000 vandal attack, the unexpected currents that caused the failure of the November 9, 2000 attempt, and the November 14, 2000 capsizing of Dredge America's dredge.

Second, we respectfully request the Court to preclude Weeks Marine from using Exhibit 300, an "estimate" of weather and wave conditions at the project site during the period January

19 to February 2, 2000. Exhibit 300 was not prepared until three years later, in March 2003, and was not produced by Weeks Marine during fact discovery, which closed in May 2003. Exhibit 300 was also not disclosed during expert discovery, which closed in September 2004, although it presents the opinions of a third party, Wilkens Weather Technologies, Inc., regarding weather and wave conditions during the period when Weeks Marine and Dredge America performed their site inspections. Finally, Exhibit 300 is hearsay, because Weeks Marine has not identified on its list of trial witnesses any witness who will testify about how the estimate was prepared by Wilkens Weather.

Third, we respectfully request the Court to exclude any opinions offered by Weeks Marine's expert, Paul Barber, that the Corps of Engineers did not follow its own regulations in preparing the specifications for the geotextile tube project, and withheld from bidders photographs and surveys that were essential to prepare bids. Mr. Barber's opinion regarding the Corps of Engineers' alleged failure to follow its own regulations should be excluded because it is not relevant to either theory of recovery asserted by Weeks Marine: a Type I differing site condition, and superior knowledge by the Government of the site conditions.

Even if Mr. Barber's opinion were relevant, whether the Corps of Engineers has complied with a regulation is a legal issue for the Court to decide, and is not the proper subject of expert testimony. Likewise, Mr. Barber's opinion that the Corps of Engineers improperly withheld information from Weeks Marine should also be excluded, because it is a legal conclusion about one of the ultimate legal questions in this case: whether the Government is liable pursuant to the superior knowledge doctrine.

## ARGUMENT

### I. The Court Should Preclude Weeks Marine From Using The Total Cost Method To Prove Damages, And From Relying Upon Portions Of Exhibits 123 And 209

Weeks Marine filed a claim for equitable adjustment on behalf of its subcontractor, Dredge America, in which Dredge America sought additional costs (including 10 percent profit) of $1,108,002. Exhibit 123, Tab C. As stated in Weeks Marine's October 14, 2004

Memorandum of Contentions of Fact and Law, after the audit performed by the Defense Contract Audit Agency ("DCAA"), Dredge America reduced its claim for to $838,345, consisting of direct costs of $322,306, Eichleay overhead calculation of $159,753, and 42.5 percent profit of $356,286. These figures are reflected in Appendix 3 to the DCAA Audit Report (at 57-60), which is Exhibit 209. Weeks Marine stated in its Appendix A list of trial exhibits that it "may" offer Exhibit 209 at trial.

Dredge America's pass-through claim relies upon the total cost method, in which "'the measure of damages is the difference between the actual cost of the contract and the contractor's bid.'" Hi-Shear Technology Corp. v. United States, 356 F.3d 1372, 1383 (Fed. Cir. 2004) (quoting Raytheon Co. v. White, 305 F.3d 1354, 1365 (Fed. Cir. 2002)). Using the total cost method, Dredge America has attributed to the alleged differing site condition all of the additional costs that Dredge America incurred, without regard to whether any actions or omissions by the Government caused these additional costs. However, as the Federal Circuit has warned:

> The total cost method of recovery is not favored and will not be used if, as here, there is another, more reliable method available by which to establish the contractor's damages. In any event, before a contractor can obtain the benefit of the total cost method, it must prove: (1) the impracticability of proving its actual losses directly; (2) the reasonableness of its bid; (3) the reasonableness of its actual costs; and (4) lack of responsibility for the added costs.

Hi-Shear, 356 F.3d at 1383 (citing Propellex Corp. v. Brownlee, 342 F.3d 1335, 1339 (Fed. Cir.2003)).

Weeks Marine has not identified in its Appendix A list of trial exhibits any evidence that proves any of the four requirements for using the total cost method. It has not designated an accountant or anyone else as an expert witness who will testify about how Weeks Marine has satisfied the four requirements for relying upon the total cost method. Nor has it disclosed any expert opinions regarding the impracticability of proving its actual losses directly, the reasonableness of its bid, the reasonableness of its actual costs, or its lack of responsibility for the added costs. This failure is fatal to its attempt to rely upon the total cost method for claiming damages.

Although Weeks Marine has not met any of the four requirements for relying upon the total cost method, its failure to prove its lack of responsibility for the added costs is its most grave shortcoming. At the end of oral argument on the summary judgment motions filed in this case, the Court put Weeks Marine on notice that it must address the question of whether the Government had caused all of the damages that Weeks Marine seeks:

> A reading of this Weeks Dredging case I think probably means that you need to give some careful thought, Mr. Webb, to your but-for causation thing, because it appears to me to sweep much more broadly than that standard. That's something else what you're probably going to want to explore in terms of a pretrial memorandum here. . . . we're going to have to make some allocations here potentially in terms of what can be properly attributable, if there is one, to a differing site condition, versus what is not.

Tr. 136:16-22, 137:1-4 (April 2, 2004). Weeks Marine has not identified any exhibits or witnesses who can prove its lack of responsibility for the added costs that it incurred after the July 27, 2000 attempt to install the geotextile tubes.

As noted in defendant's November 29, 2004 Memorandum of Contentions of Law and Fact, it is indisputable that the vandals' attack on the tubes on September 26, 2000, and the second capsizing of Dredge America's dredge on November 14, 2000, were not caused by the alleged differing site conditions. Def. Mem.[1] 42. Likewise, Dredge America's project manager, John Morris, testified during his deposition that the November 9, 2000 attempt to install a tube failed because unexpected currents from the west swept the tube off the weir, and because of unforeseen difficulties managing the floating line used to fill the tubes. Def. App.[2] 138 (Morris 198:14-199:5, 200:9-22). Weeks Marine and Dredge America cannot attribute to the Government any of the costs that it incurred after the July 27, 2000 failed attempt to install the geotextile tube, even if that failure were caused by the allegedly differing site condition.

Because Weeks Marine has not identified any evidence to prove that it and Dredge

---

[1] "Def. Mem." refers to Defendant's Memorandum Of Contentions Of Law And Fact, filed November 29, 2004.

[2] "Def. App." refers to Defendant's Appendix In Support Of Its Motion For Summary Judgment, filed November 6, 2003.

America lack responsibility for these added costs, the Court should not permit Weeks Marine to use the total cost method. Hi-Shear, 356 F.3d at 1383. Further, the Court should preclude Weeks Marine from relying upon the statement of claimed costs in Tab C of Exhibit 123 and in Appendix 3 to Exhibit 209. Id. Neither statement apportions Weeks Marine's claimed costs to distinguish costs that Weeks Marine attributes to the alleged differing site conditions, from costs that indisputably resulted from causes not attributable to the Government, such as vandals, dredge capsizings, and unexpected changes in currents at the project site. Even if Weeks Marine is not precluded from relying upon Tab C of Exhibit 123 and Appendix 3 to Exhibit 209, the Court should preclude Weeks Marine from presenting any evidence that the Government is liable for any of the costs incurred after the July 27, 2000 failed attempt to install the geotextile tube.

Finally, the Court should preclude Weeks Marine from seeking a 42.5 percent profit rate for Dredge America's pass-through claim. Dredge America claimed its as-bid 42.5 percent profit rate in the revised claim that Dredge America prepared (Appendix 3 to Exhibit 209) in response to the DCAA audit. In its original claim, however, Dredge America had sought a profit rate of 10 percent. As we noted in our pre-trial brief, 10 percent is a much more reasonable profit rate for an after-the-fact claim. Def. Mem. 45. The Court should preclude Weeks Marine from presenting any evidence that Dredge America is entitled to claim more than the 10 percent profit rate that Dredge America sought in its initial claim, because that claim is an admission by Dredge America that 10 percent is a reasonable profit rate for an after-the-fact claim.

## II. The Court Should Exclude Exhibit 300 Because It Was Not Disclosed During Fact Or Expert Discovery, And Is Hearsay

Plaintiff's exhibit 300 was prepared by Wilkens Weather Technologies, Inc., and is titled, "Estimates of Historical Conditions for the Mouth of the Colorado River, TX from January 19, 2000 to February 2, 2000 with Emphasis on Wind Speed and Direction and Wave Height and Period." For each day during the two-week period, Exhibit 300 summarizes weather conditions, such as "[l]ow pressure and a weak cold front over Central and Northeast Texas," and provides figures for the alleged wind speed and direction and wave height and period at the mouth of the

Colorado River, near the project site. At the bottom of the final page of the Exhibit 300 appears the name of the apparent author of the document, "Marshall Wickman, Staff Meteorologist, Shift Supervisor, Wilkens Weather Technologies L.P. [sic]"

During fact discovery, Weeks Marine produced to the Government two daily forecasts for September 16 and 18, 2000 that Wilkens Weather provided to Dredge America, numbered WE 177-181. Dredge America's project manager, John Morris, testified during his deposition that Weeks Marine suggested that Dredge America order the forecasts to assist it in anticipating favorable conditions for installing the geotextile tubes. The forecasts predicted the expected wind direction and speed and wave direction, height, and period for the following 24, 48, and 72 hours. Fax headers on the forecasts indicate that they were sent to Dredge America from Wilkens Weather on September 16 and 18, 2000.

In contrast, exhibit 300 is dated March 6, 2003, over two years after the geotextile tubes were installed. Exhibit 300 states that it contains "estimates of historical conditions," and thus it purports to present what were the actual conditions during the two-week period from January 19 through February 2, 2000, rather than predicting what the conditions were expected to be, as did the forecasts produced by Weeks Marine during discovery. Unlike the forecasts, which were prepared in September 2000 while Dredge America was attempting to install the geotextile tubes, Exhibit 300 covers the two weeks before the opening of bids. It was during this period when Weeks Marine and Dredge America conducted their site inspections.

Defendant’s counsel understands from plaintiff’s counsel that the document was prepared by Wilkens Weather after the Government took the deposition of Dredge America employee John Morris on February 25, 2003. During his deposition, Mr. Morris was questioned about the wave and weather conditions he observed during the site inspections he performed on January 28 and 29, 2000.

There are several reasons that Exhibit 300 should be excluded from evidence at trial. First, Exhibit 300 was not produced by Weeks Marine during fact discovery, which closed on

May 23, 2003, pursuant to the Court's March 11, 2003 order. Defendant's Document Request No. 3 states: "Please produce any document relating to any site inspection conducted by you, for you, or on your behalf, in connection with the contract that is the subject of this lawsuit." RCFC 26(e)(2) requires a party to seasonably supplement its responses to discovery requests. Tritek Technologies, Inc. v. United States, ___ Fed. Cl. ___, 2005 WL 318688 (Feb. 7, 2005) at *6. Exhibit 300 purports to show weather conditions during the period when Weeks Marine and Dredge America performed their site inspections.

Weeks Marine obtained Exhibit 300 soon after it was prepared on March 6, 2003. RCFC 26(e)(2) required Weeks Marine to supplement "seasonably" its response to defendant's Document Request No. 3 promptly after receiving the document, and certainly during fact discovery, which was not completed until more than two months later, on May 23, 2003. RCFC 26(e)(2). Because Weeks Marine failed to produce Exhibit 300 during fact discovery, it should be excluded from evidence pursuant to RCFC 37(c)(1). Tritek, 2005 WL 318688 at *11.

Second, even if the Court concluded that the Government was not prejudiced by Weeks Marine's failure to produce Exhibit 300 during fact discovery, the exhibit should be excluded because Weeks Marine failed to produce the document during expert discovery. The Court's May 25, 2004 order required the parties to exchange expert reports by September 17, 2004. In addition, defendant's Interrogatory No. 17 stated: "Please identify every witness -- lay or expert -- you intend to call at trial and summarize the testimony you intend to elicit." In response to Interrogatory No. 17, Weeks Marine stated that "Dredge America has not yet identified any expert witnesses. This interrogatory will be supplemented as necessary." The response to Interrogatory No. 17 was never supplemented, although Weeks Marine did disclose the expert report of Paul Barber on September 8, 2004, the date the parties agreed to exchange expert reports.

Exhibit 300 should be excluded because it presents the opinion of Wilkens Weather about what the weather and wave conditions were likely to have been during the period when Weeks

Marine and Dredge America conducted their site inspections. Unlike the other documents produced by Weeks Marine during fact discovery, which were contemporaneous documents from the period of the geotextile tube project (2000-2001), Exhibit 300 was not prepared until March 2003, during fact discovery in this case. Further, it was not disclosed by Weeks Marine to the Government until October 21, 2004, six weeks after the parties agreed to exchange expert reports, and one week after Weeks Marine filed its Appendix A lists of trial exhibits and witnesses.

In its list of trial witnesses, Weeks Marine did not identify Marshall Wickman or any other employee from Wilkens Weather as an expert witness who could explain how the opinions contained in Exhibit 300 were prepared. It is unknown whether the information it contains is based upon extrapolations from forecasts, or upon recorded data of actual wave and weather conditions. In contrast, one of the Government's experts, Dr. Lee Harris, disclosed in the appendices to his September 8, 2004 expert report wind and tide data from identified sources that provided the basis for his opinion. The Government identified Dr. Harris as one of its expert witnesses in the Appendix A list of trial witnesses that the Government filed on November 29, 2004.

Exhibit 300 should be excluded from evidence because it expresses opinions that were not disclosed during the expert discovery period, and because Weeks Marine did not identify in its Appendix A filings any witness who will present those opinions at trial.

Third, even if the Court does not consider Exhibit 300 to express opinions, it should be excluded as evidence pursuant to Federal Rule of Evidence 802 as hearsay. The only purpose for seeking to admit the document into evidence is to prove the truth of Weeks Marine's assertions regarding what were the wave and wind conditions during the period that Weeks Marine and Dredge America performed their site inspections. However, because Weeks Marine has not identified any witness who is competent to testify about Exhibit 300, it meets the definition of "hearsay" set forth in Federal Rule of Evidence 801(c).

Moreover, there are no applicable exceptions to the hearsay rule. Exhibit 300 is not a business record, because it was specifically created at the request of Weeks Marine for the purposes of this suit. Kolmes v. World Fibers Corp., 107 F.34 1534, 1543-44 (Fed. Cir. 1997) (affirming exclusion of document because witness could not explain how alleged business record was created by a third party). Thus, Exhibit 300 should be excluded as hearsay.

## III. The Court Should Exclude Any Testimony By Weeks Marine's Expert Regarding Irrelevant Subjects Or Ultimate Legal Questions To Be Decided By The Court

In its Appendix A list of trial witnesses, Weeks Marine identified Mr. Paul Barber as its sole expert witness. Mr. Barber was employed as an engineer by the Corps of Engineers from 1957 until 1995. Until 1992, he spent his entire career in the Kansas City District of the Corps of Engineers.

Weeks Marine's list of trial witnesses states that Mr. Barber will testify about "the reasonableness of the site inspections conducted by Dredge America and the accuracy of Sketch 1." However, Mr. Barber's September 8, 2004 expert report also presented his opinions about two other subjects. In his report, Mr. Barber disclosed his opinion that "coordination within the Galveston District" of the Corps of Engineers in preparing the specifications of the geotextile tube project at issue in this suit "was very poor," and that the Corps of Engineers did not follow allegedly applicable regulations and procedures for preparing specifications, including the regulation marked as Exhibits 220 and 221. He also offered the opinion that this alleged lack of coordination "resulted in a specification that did not include information essential to bidders," and that the Corps of Engineers should not have "withheld project-specific information (photographs, as-built surveys, and other surveys) from the bidders."

The Court should exclude any opinions offered by Mr. Barber either in his report or in his trial testimony that the Corps of Engineers did not follow its procedures or regulations in preparing the specification. These opinions are not relevant to either theory of recovery asserted by Weeks Marine: a Type I differing site condition, and superior knowledge by the Government of the site conditions. The elements that a contractor must prove to establish a differing site

condition or superior knowledge claim are set forth in our pre-trial brief. Def. Mem. 26, 42-43. Whether the Government followed certain procedures in preparing a solicitation is not an element of either cause of action.

Federal Rule of Evidence 702 imposes on the Court a special "gatekeeping obligation" to prevent the introduction of certain expert testimony that is irrelevant or unreliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 569 (D.C. Cir. 1993); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). The Court should exclude any opinion by Mr. Barber about whether the Corps of Engineers followed allegedly applicable regulations and procedures in preparing the specifications of the geotextile tube project. The Court should also preclude Weeks Marine from introducing Exhibits 220 and 221, which contain one of these regulations, and which Weeks Marine has stated it "expects to offer" in its list of trial exhibits.

Even if Mr. Barber's opinion were relevant, whether the Corps of Engineers has complied with a regulation is a legal issue for the Court to decide, and is not the proper subject of expert testimony. Under Federal Rule of Evidence 702, it is axiomatic that an expert witness may not provide testimony on legal issues before the Court because such testimony does not assist the trier of fact. "An expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all." Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 1574 (Fed. Cir. 1993) (citing Nutrition 21 v. United States, 930 F.2d 867, 871 n. 2 (Fed. Cir.1991)); Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (10th Cir. 2003) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.").

Likewise, the Court should exclude any opinion by Mr. Barber that the Corps of Engineers improperly withheld photographs, as-built surveys, and other surveys that were allegedly essential to bidders, because it is a legal conclusion about one of the ultimate legal

questions in this case: whether the Government is liable pursuant to the superior knowledge doctrine. The fourth element in proving a superior knowledge claim is whether "'the government failed to provide the relevant information.'" Def. Mem. 43 (quoting Giesler v. United States, 232 F.3d 864, 876 (Fed. Cir. 2000). The Court does not require any expert testimony to determine whether the Government is liable pursuant to the superior knowledge doctrine.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court grant its motion to exclude the exhibits and testimony described above, and grant such other relief as the Court sees fit to grant.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen

DAVID M. COHEN
Director

s/ John H. Williamson

JOHN H. WILLIAMSON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
ATTN: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972
Email: john.williamson@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

ALEX PETTY
Assistant District Counsel
U.S. Army Corps of Engineers
Galveston District
Jadwin Building
2000 Fort Point Road
Galveston, TX 77550

March 1, 2005

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 1st day of March, 2005, a copy of the foregoing "DEFENDANT'S MOTION IN LIMINE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s John H. Williamson